## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **3455 LLC,** | |
| **Plaintiff,** | |
| **v.** | **1:12-cv-01020-WSD** |
| **ND PROPERTIES, INC.,** | |
| **Defendant.** | |

## OPINION AND ORDER

This matter is before the Court on Defendant ND Properties, Inc.'s ("ND Properties") Motion for Summary Judgment [32], in which ND Properties seeks summary judgment on Counts II-IV[1] of Plaintiff's Complaint, and on the claims in ND Properties' Counterclaim.

## I.    BACKGROUND

### A.    Facts

This action involves the interpretation of a lease of real property for the operation of the former Bluepointe restaurant in the Buckhead neighborhood of Atlanta.  On June 11, 1998, Plaintiff 3455, LLC ("Plaintiff") entered into a fifteen

---

[1] Count I of the Complaint previously was dismissed.  See discussion at page 5 of this Order.

(15)-year lease agreement ("Lease") with Cousins Loret Venture, LLC ("Cousins") to lease approximately 9,885 square feet ("Premises" or, as used in the Lease, the "Demised Premises") on the ground floor and concourse level of the Pinnacle building.  The building is owned by Cousins, and located at 3455 Peachtree Road, N.E. in Atlanta.  The Lease, by its terms, provides for an expiration date of October 31, 2014.  The Premises that are the subject of the Lease are depicted on Exhibit B, attached to the Lease.  See Lease at 4, Ex. B.  Plaintiff owned and operated an Asian Fusion restaurant called Bluepointe on the Premises.  In 2004, Cousins sold the office building and assigned its rights and obligations under the Lease to ND Properties, which became the landlord under the Lease.

In 2008, sales at the Bluepointe restaurant declined significantly due to a number of factors, including the recessionary effect on the national and regional economies, and, according to Plaintiff, the departure of various building tenants which generated income for the restaurant.  As a result of this decrease in restaurant patronage and the resulting losses of income, Plaintiff was unable to make certain rent payments, including the rent payment due on July 1, 2011.  This failure to pay rent constituted a default under the Lease.

After default for failure to pay, ND Properties initiated actions against Plaintiff to dispossess Plaintiff from the Premises.  These dispossessory actions

2

resulted in the entry of a Consent Agreement in which Plaintiff agreed that "as a result of [Plaintiff's] default, [ND Properties] was entitled to the issuance of a writ of possession."  Consent Agreement at ¶ 1.  ND Properties agreed not to cause the Fulton County Sheriff's Office to formally evict Plaintiff from the Premises provided Plaintiff met a variety of forbearance conditions.  These included:

1. Plaintiff would pay by August 30, 2011, the sum of $130,611, which consisted of the lease rent charges, parking charges, and estimated utility charges for September, October, and November 2011.[2]

2. A money judgment in the amount of $148,967.45 be entered against Plaintiff, which would be paid by August 30, 2011.

3. Plaintiff would not remove personal property from the premises.

4. Plaintiff would continue to perform all of its obligations under the Lease.

5. Plaintiff's right to possess the Premises would terminate on November 30, 2011, and on that date Plaintiff would vacate the Premises.

6. Plaintiff's vacation of the Premises would not constitute a surrender of the Lease.

Consent Agreement at 1-2.

---

[2] ND Properties agreed to adjust the estimated charges for September, October, and November utilities based on actual charges for utilities used.  It did not agree to adjust rent or parking charges.

On November 30, 2011, Plaintiff vacated the Premises, leaving behind certain personal property, including furniture, fixtures and equipment ("Equipment").  Plaintiff has not made any rent payments to ND Properties, and has not reimbursed ND Properties for utility and parking charges incurred during Plaintiff's tenancy after Plaintiff vacated the Premises on November 30, 2011.

In December 2012, ND Properties entered into a lease agreement with a new tenant to occupy the Premises, and with an expected occupancy date in November or December of 2013.  ND Properties claims that it spent $2,228,843 to re-let the Premises to another restaurant owner.

B.    Procedural History

On January 9, 2012, Plaintiff initiated this action in the Superior Court of Gwinnett County, Georgia.  In its Complaint, Plaintiff asserts four (4) counts seeking: (i) a declaration that Plaintiff is not liable for rent payments after Plaintiff vacated the Premises because the Lease does not contain "an explicit and detailed provision" that obligates Plaintiff to continue paying rent (Count I); (ii) a declaration that ND Properties improperly retained possession of Plaintiff's property (Count II); (iii) a declaration that ND Properties' actions in granting a right-of-way over to a third-party constituted termination of the Lease (Count III); and a declaration that Plaintiff is not obligated to clean and repair the Premises, or

4

that such cleaning is not necessary (Count IV).

On March 26, 2012, ND Properties removed the action to this Court on the basis of diversity jurisdiction. On April 2, ND Properties filed its Answer. On June 18, 2012, ND Properties filed a Motion for Judgment on the Pleadings seeking judgment in its favor on Count I of Plaintiff's Complaint. On February 12, 2013, the Court granted the Motion, dismissing Count I of the Complaint [11]. In its February 12, 2013, Order, the Court found that the Lease contained an "explicit and detailed provision" that permitted ND Properties, upon Plaintiff's default, to take possession of the Premises, without terminating the Lease, and without relieving Plaintiff of its obligation to continue making rent and other payments required by the Lease.

On May 14, 2013, ND Properties filed an Amended Answer to Plaintiff's Complaint, and asserted a Counterclaim for Plaintiff's breach of the Lease agreement in an amount of $457,135.13, consisting of (i) past due rent from December, 2011 through May, 2013, in the amount of $376,074.49, (ii) accrued interest in the amount of $16,102.49, (iii) unpaid parking charges and fees in the amount of $15,987.74, (iv) cleaning expenses and other above-standard charges in the amount of $28,501.15, and (v) unreimbursed water and electricity charges in the amount of $20,469.28. ND Properties also seeks to collect rent and late

charges that continue to accrue under the Lease.

ND Properties contends that rent accrues during the Lease term at the rate of $22,000 per month due on the first calendar day of each month through either (i) October 31, 2014, or (ii) the date a final judgment is entered by the Court, whichever is earlier.  ND Properties also seeks to collect late fees, at the rate of 5.25% per annum, for rent that accrued but which was not timely paid.  ND Properties further seeks attorneys' fees and expenses of this litigation pursuant to Paragraph 18 of the Lease or O.C.G.A. § 13-1-11 and O.C.G.A. § 13-6-11, and pre-judgment and post-judgment interest.

On December 9, 2013, ND Properties moved for summary judgment on Counts II-IV of Plaintiff's Complaint.  ND Properties also moved for summary judgment on its Counterclaim for past due rent, interest and other charges owed under the Lease.  ND Properties seeks a judgment against Plaintiff in the principal amount of $755,048.84, for unpaid rent and other charges, plus pre- and post-judgment interest, and attorneys' fees in the amount of $77,303.83 pursuant to Paragraph 18.2.3 of the Lease and O.C.G.A. § 13-1-11.

## II.    DISCUSSION

### A.    Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings." Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record." Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.    Analysis of Plaintiff's Claims

    1.    *Termination of the Lease*

        i.    Rescission

The crux of Plaintiff's Complaint is that ND Properties' grant of a right-of-way to a third-party terminated the Lease. Plaintiff argues that it was entitled to rescind the Lease or there is, at least, a question of fact whether the Lease was rescinded as a result of property used by the Georgia Department of Transportation ("GDOT") to enlarge an area outside of the Premises as part of the "Peachtree

8

Transformation" project.  Plaintiff relies on Paragraph 33(a) of the Lease to

support its argument.  Paragraph 33(a) provides:

> If all or part of the Demised Premises shall be taken for any public or
> quasi-public use by virtue of the exercise of the power of eminent
> domain or by private purchase in lieu thereof, this Lease shall
> terminate as to the part so taken as of the date of the taking, and, in the
> case of a partial taking, Tenant shall have the right to terminate this
> Lease as to the balance of the Demised Premises by written notice to
> the other within thirty (30) days after such date; provided, however,
> that a condition to the exercise by Tenant of such right to terminate
> shall be that the portion of the Demised Premises taken shall be of
> such extent and nature as materially to handicap, impede, or impair
> Tenant's use of the balance of the Demised Premises for its normal
> business operations . . . .[3]

Paragraph 33(a), by its terms, gives an option to the lessee.  The paragraph

states that if "all or part" of the Premises are taken by eminent domain or private

purchase in lieu of an eminent domain action, then "the Tenant shall have the right

to terminate the Lease by written notice [to the landlord] within thirty [30] days"

---

[3] Paragraph 33(a) also provides:

> If title to a portion of the Building or Project is taken (even if no part
> of the Demised Premises is taken) and such taking results in a material
> adverse affect to Tenant's use and occupancy of the Demised
> Premises or Tenant's access to the Building Parking Facilities or the
> Demised Premises (and Landlord does not provide notice to Tenant
> within sixty [60] days of the date of such taking that such material
> adverse affect will be alleviated by repairs or replacements made
> within nine [9] months of the date of such notice), Tenant may
> terminate this Lease by written notice thereof to Landlord within
> seventy-five (75) days after the date of such taking . . . .

Plaintiff does not argue in its Response that this portion of Paragraph 33(a) applies
here.

after the exercise of eminent domain or the private sale.  <u>See</u> Def.'s Ex. 1 at ¶ 33.

Paragraph 33(a) further provides: "a condition to the exercise by Tenant of such

right to terminate shall be that the portion of the Demised Premises taken shall be

of such extent and nature as materially to handicap, impede, or impair Tenant's use

of the balance of the Demised Premises for its normal business operations."  <u>Id.</u>

In April 2009, GDOT began work on the "Peachtree Transformation"

project to "beautify and make more pedestrian friendly the Peachtree Corridor of

Buckhead – the area of Peachtree running north from its intersection with

Piedmont Road to its intersection with Roxboro Road."  Def.'s Statement of

Undisputed Facts at ¶ 7.  In connection with the "Peachtree Transformation"

project, ND Properties conveyed 1,300 square feet of sidewalk and curb in front of

the Pinnacle to GDOT.  <u>Id.</u>  Plaintiff contends the conveyance of the area for the

expanded sidewalk included a portion of the Premises rendering the Lease

unenforceable.[4]  In Count III of the Complaint, Plaintiff seeks a declaration that

_____

[4] The Lease defines the term "Demised Premises" as "That certain rentable floor
area on the 1st floor of the Building which is hatched on the Preliminary Floor Plan
of the 1st floor of the Building attached hereto as <u>Exhibit B</u> (containing
approximately 7,885 square feet of rentable floor area), plus approximately 2,000
square feet of usable floor area on the concourse level of the Building in a specific
location on the concourse level of the Building to be designated by Landlord as
provided in Article 2 hereof, plus the outdoor patio area which is hatched on the
Preliminary Floor Plan attached hereto as <u>Exhibit B</u>."  <u>See</u> Def.'s Ex. 1 at 4.

ND Properties' failure to reveal the taking of the Premises terminates the Lease as to the portion taken, or terminates the Lease as to the balance of the Demised Premises.  The Court disagrees.

Paragraph 33(a) of the Lease, which is entitled "Eminent Domain," provides to the Tenant the option to terminate the Lease, if all or part of the Demised Premises is taken for any public or quasi-public use by the power of eminent domain or by private purchase.  See Def.'s Ex. 1 at 38-39.  Paragraph 33(a) does not require the option to be exercised and it does not cause the Lease to be rescinded by operation of law.  The right to termination is optional in the event there is a taking of any or all of the Premises.  That this right requires exercise makes practical and commercial sense.  A taking by a government entity of a portion of the Premises may well enhance the value or desirability, or both, of the Premises causing the lessee to not want to exercise its option under Paragraph 33(a).  The provision of written notice of the choice to terminate is an unambiguous, required predicate to termination.[5]  The undisputed evidence here is

---

[5] Notice was required to allow ND Properties the right to respond to a claimed impact by making repairs or otherwise ameliorating the adverse impact claimed.

that notice of termination was not given by Plaintiff and that termination did not occur.[6]

Next, there is no evidence that what was transferred to GDOT included any portion of the Premises.  ND Properties has submitted a Declaration from its Senior Property Manager, responsible for managing the Pinnacle building, that no portion of the "Demised Premises" or "Building" was transferred in connection with the Peachtree Transformation project.  See Beauchamp Decl. at ¶¶ 8-12.  In its effort to rebut this unequivocal statement, Plaintiff relies on a couple of vague statements from the September 20, 2013, deposition of Bill Johnson, the owner of the architectural firm that designed the Bluepointe restaurant.  Johnson testified that a picture presented to him at his deposition that depicted a construction barrel in front of the restaurant "appeared to be within the area that would have been the patio or contemplated outdoor use . . . ."  Johnson Dep. at 27:4-18.  Johnson was uncertain about what the picture depicts.  He also does not state—assuming the barrel is on the Premises—that the picture supports that any part of the Premises was used for the Peachtree Transformation project.  He does not state that the

---

[6] That Plaintiff did not terminate is evidenced in the Consent Agreement.  There is nothing in the Consent Agreement even supporting that Plaintiff believed the Lease terminated as a result of the conveyance of certain property to GDOT by ND Properties.  To the contrary, Plaintiff affirmed and ratified the enforceability of the Lease in the plain language of the Consent Agreement.

barrel shows there was construction on the Premises, and does not state the barrel's presence indicates that any part of the Premises was used for the sidewalk improvements. He simply stated that a barrel appeared to be on the patio without offering an opinion on who put it there, why it was put there, and what it showed.

Johnson's testimony about the barrel does not dispute the uncontested testimony of the Senior Property Manager that no portion of the Demised Premises was conveyed to or used by GDOT for the Peachtree Transformation project. Considering Johnson's testimony in a light most favorable to Plaintiff and drawing all inferences in Plaintiff's favor, the Court necessarily concludes that no reasonable juror would find that a portion of the Premises was conveyed to GDOT or used in the Peachtree Transformation project. See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 743 (11th Cir. 1996) ("Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the non-movant's claim rests.").

Finally, the evidence here is undisputed that even if a portion of the Premises was used for the Transformation project, it was not material. The Lease allowed termination only if the portion of the Premises taken was of "such extent and nature as materially to handicap, impair, impede, or impair Tenant's use of the

balance of the Demised Premises for its normal business operations."  <u>See</u> Def.'s Ex. 1 at ¶ 33.  Plaintiff did not present any evidence that the taking it claimed resulted in any impact on Plaintiff's use of the Premises.  Plaintiff did not offer any evidence that Plaintiff's business was impacted in anyway by the claimed taking, assuming that there was one.  Plaintiff did not show a reduction in its business, its seating capacity or any other impact to its operations.  To the extent Plaintiff alleges the taking was of a portion of its patio, Plaintiff did not submit any evidence to show that the patio was even used while the restaurant was open for business.  There is simply no evidence of an adverse impact resulting from the "taking" Plaintiff contends occurred.

Plaintiff failed to send any notice to ND Properties regarding the taking it now claims occurred.  The absence of any evidence of an impact on the Premises, impact on Plaintiff's business, and the failure to give written notice requires the Court to conclude that the Lease was not, and could not be, terminated pursuant to Paragraph 33(a).

ii.   <u>Waiver</u>

By failing to give notice of a claimed taking and its resulting impact on Plaintiff's business, Plaintiff also has waived any right it had under Paragraph

33(a) of the Lease.[7]  The record here reflects that Plaintiff was aware of the alleged taking when construction commenced on the project in November or December of 2010.  3455 Dep. at 35: 4-5.  Plaintiff did not object to the claimed partial taking of the Demised Premises until it raised the issue in this litigation.  In Forehand v. Perlis Realty Co., the Court found that a lessee had waived its right to rescind the agreement because the lessee knew of the alleged breaches, but took "no action on any of the alleged breaches" until after the lessor filed a lawsuit, "at which time [lessee] scrutinized the lease and decided to cancel the lease and cease making any further payments under the lease."  400 S.E.2d 644, 649 (Ga. Ct. App. 1990).  That is precisely what happened here.

Plaintiff here failed to object to the claimed partial taking of the Demised Premises when Plaintiff claims to have discovered it, and Plaintiff raises it now in this lawsuit to evade Plaintiff's responsibility to pay rent.  The Court concludes that Plaintiff does not have a right to terminate the Lease under Paragraph 33(a), and even if it did, it has waived it.  Id.; see also Nguyen, 585 S.E.2d at 913

---

[7] "A waiver of rights under a contract may be express or implied from acts or conduct."  James v. Mitchell, 285 S.E.2d 222, 223 (Ga. App. Ct. 1981).  If a contract "is continued in spite of a known excuse, the defense thereupon is lost and the injured party is himself liable if he subsequently fails to perform."  Nguyen v. Talisman Roswell, LLC, 585 S.E.2d 911, 913 (Ga. App. Ct. 2003) (citations and quotation marks omitted).

(holding that "Talisman's evidence, together with Nguyen's own pleadings, show that Nguyen knowingly waived any defect in Talisman's performance of the lease by failing to object to notice of the correct square footage and then remaining on the premises for more than two years without complaint.").[8]

For the reasons stated above, the Court grants ND Properties' Motion for Summary Judgment on Count III of Plaintiff's Complaint.

### 2.    *Retention of Equipment*

Plaintiff seeks a declaration that ND Properties' retention of Equipment on the Premises satisfies its obligation to pay rent, is at least an offset to any rent found to be overdue, or otherwise constitutes grounds to rescind the Lease. Plaintiff argues that Paragraph 58 of the Lease vested ND Properties with a security interest in Plaintiff's "trade fixtures, furniture, furnishings, equipment, and personal property."  See Def.'s Ex. 1 at ¶ 58.  Plaintiff claims that this security interest, in the event of default, is governed by the Uniform Commercial Code as enacted in the State of Georgia.  Id.  The Equipment was maintained at the

---

[8] To the extent Plaintiff asserts that the claimed partial taking of the Premises terminated the Lease, an argument alluded to in the Complaint, but not advanced in Plaintiff's Response to the Motion for Summary Judgment, the Court notes that Plaintiff did not exercise the right to terminate the Lease by providing written notice within the time limits prescribed by Paragraph 33(a) of the Lease.  Plaintiff, instead, continued to occupy the Premises, and paid rent until it determined that the rental payments were no longer feasible.

Premises until it was auctioned by ND Properties in June, 2013.  Plaintiff asserts that ND Properties failed to auction the Equipment in a commercially reasonable manner as required by O.C.G.A. § 11-9-610(b), and thus the value of the Equipment is presumed to equal the value of the unpaid rent.

Paragraph 58 of the Lease does not apply here because Plaintiff was dispossessed of the Premises.  Paragraph 30 of the Lease provides:

> . . . If tenant shall fail or refuse to remove all of Tenant's effects, personalty and equipment from the Demised Premises upon the expiration or termination of this Lease for any cause whatsoever *or upon the Tenant being dispossessed by process of law or otherwise*, such effects, personalty, and equipment shall be deemed conclusively to be abandoned and may be appropriated, sold, stored, destroyed or otherwise disposed of by Landlord without written notice to Tenant or any other party and without obligation to account for them . . . .

Def.'s Ex. 1 at ¶ 30 (emphasis added).  In the Consent Agreement, Plaintiff expressly agreed that ND Properties had a right to a writ of possession of the Premises and further agreed that ND Properties had the right to retake the Premises after Plaintiff's possession terminated on November 30, 2011, due to Plaintiff's failure to pay past due rent.  See Consent Agreement at ¶ 8.  Plaintiff also agreed that all of its personal property would remain on the Premises after Plaintiff vacated the Premises.  Id. at ¶ 4(a).

Plaintiff's dispossession triggered Paragraph 30 of the Lease.  That provision states that "upon the [Plaintiff being dispossessed by process of law or otherwise,"

17

Plaintiff's personal property "shall be deemed conclusively to be abandoned." Paragraph 30 also allowed ND Properties to sell the Equipment without written notice to Plaintiff or any other party.  Paragraph 30 of the Lease is enforceable under Georgia law.  See Int'l Biochemical Indus., Inc. v. Jamestown Mgmt. Corp., 586 S.E.2d 442, 446-47 (Ga. Ct. App. 2003) (interpreting language nearly identical to Paragraph 30 as a stipulation that deems personalty remaining on the premises as abandoned property that may be appropriated by the lessor); Chouinard v. Leah Enterprises, Inc., 422 S.E.2d 204, 205-06 (Ga. Ct. App. 1992) (holding that "since the tenant was in default, the right to remove trade fixtures had also been extinguished.").  ND Properties' Motion for Summary Judgment on Count II of Plaintiff's Complaint is granted.

C.     Analysis of ND Properties' Counterclaims

ND Properties asserts a Counterclaim against Plaintiff for (i) unpaid rent from December 1, 2011, through September 30, 2013, in the amount of $464,074.49, (ii) accrued interest to date, in the amount of $28,750.09, (iii) unpaid parking charges and fees in the amount of $16,500.22, (iv) unreimbursed above-standard water and electricity charges in the amount of $22,839.76, and

(v) unreimbursed costs of re-letting the Premises in the amount of $222,884.28.[9]

### 1.   Unpaid Rent

Paragraph 5.1 of the Lease requires Plaintiff to pay rent on the first day of each calendar month:

> Tenant hereby agrees to pay all Base Rental and due and payable under this Lease commencing on the Rent Commencement Date and continuing thereafter through the Lease Term.  Base Rental shall be due and payable in twelve (12) equal installments on the first day of each calendar month, commencing on the Rental Commencement Date and continuing thereafter throughout the Lease Term, and Tenant hereby agrees to pay such Rent to Landlord's address as provided herein (or such other address as may be designated by Landlord from time to time) monthly in advance . . . .

See Def.'s Ex. 1 at ¶ 5.

Plaintiff owes past due rent in the amount of $464,074.49 from December 1, 2011 through September 30, 2013.  See Beauchamp Rep. Decl. at ¶ 10.  The Court concludes that Paragraph 5.1 of the Lease is unambiguous, and its terms are enforceable.  See Truitt Oil and Gas, Inc. v. Ranger Ins. Co., 498 S.E.2d 572, 573 (Ga. Ct. App. 1998).  The undisputed facts presented to the Court support that Plaintiff breached Paragraph 5.1 and thus is liable for the damages incurred by

---

[9] ND Properties does not demand rent for the month of October, 2013, because ND Properties' new tenant agreed to sign a lease that begins on October 1, 2013.  See Beauchamp Rep. Decl. at ¶¶ 8-10.  The amount of interest due is greater than the amount sought in the Amended Answer because of the length of time that passed during the pendency of this litigation.

Defendant, which can be calculated according to the terms of the Lease and the undisputed evidence of rent owed.  Id.

### 2.     *Unpaid Utilities and Parking Fees*

Paragraph 8 of the Lease requires Plaintiff to pay the actual metered costs of all utilities within ten days of receiving a billing statement:

> Landlord shall provide electricity and water for use in the Demised Premises and for use in connection with Tenant's dumpster, all at Tenant's cost as provided in Exhibit E attached hereto.  Tenant covenants and agrees that Tenant shall pay on a timely basis for all public and private utility services, including but not limited to all heating, ventilating, air conditioning, gas, cable television, and other utility and communications services, that are rendered or become due and payable with respect to the Demised Premises at any time during the Lease Term commencing after the date that Tenant commences the Layout Work in the Demised Premises.[10]

See Def.'s Ex. 1 at 15.

Paragraph 47 of the Lease requires Plaintiff to pay for parking charges incurred in validating the parking tickets for its customers and provides:

> In addition to the valet parking operation which Tenant may elect to conduct as provided herein, Landlord and Tenant agree to jointly institute a validation system whereby Tenant may "validate" the parking tickets of Tenant's restaurant customers which will allow Tenant's customers with a validated exit to the Building Parking

_____

[10] Exhibit E, attached to the Lease and entitled "Building Standard Services," provides that the costs of utilities, including electricity and water, shall be paid by Tenant to Landlord "on a monthly basis within ten (10) days after Tenant shall receive a statement thereof."

>Facilities without imposition on such customer of a visitor parking charge, and in such case the visitor parking charge shall be borne by Tenant and paid by Tenant to Landlord on a monthly basis within thirty (30) days after receipt by Tenant of a statement therefor . . . .

Id. at 46.

The undisputed evidence shows that Plaintiff owes unpaid parking charges and fees in the amount of $16,500.22 and unreimbursed water and electricity charges in the amount of $22,839.76. See Beauchamp Rep. Decl. at ¶ 10. Plaintiff argues that parking charges, reimbursement for utilities, and other fees for June, 2011 through November, 2011, are barred by res judicata because, pursuant to the Consent Agreement, it has already paid for parking charges and reimbursed ND Properties for utilities for the months of September, October, and November, 2013. The plain language of the Consent Agreement contradicts this claim. The Consent Agreement provides that "if the amount of actual charges incurred by Tenant during Landlord's forbearance hereunder is different than the estimated amount of $57,300, then Landlord and Tenant shall adjust the amount owed to reflect the difference between the aggregate amount of actual utilities charges and the estimated amount of $57,300." Consent Agreement at ¶ 11. ND Properties seeks reimbursement for the actual amount expended on utilities on the Premises that exceeds $57,300, and the Consent Agreement provides that adjustment is proper and Plaintiff agreed the adjustment was expected to be made. Id.

21

The Consent Agreement simply does not, as Plaintiff argues, provide a limit on the amount of reimbursements for parking fees.  Plaintiff is required to pay, and ND Properties seeks to recover, parking charges that were incurred after the August, 2011, dispossessory action was resolved.  Consent Agreement at ¶¶ 11-12.  Plaintiff's res judicata argument also is not persuasive.

Res judicata also does not apply because the dispute over the unpaid parking fees was not ripe when Plaintiff entered into the Consent Agreement.  See Body of Christ Overcoming Church of God Inc. v. Brinson, 696 S.E.2d 667, 668-89 (Ga. 2010) ("The doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action . . . .").  A claim for unpaid parking fees that arose after the August, 2011, dispossessory proceedings is not identical to the parking fees issue that was the subject of the Consent Agreement.

### 3.   Re-letting Costs

Paragraph 18.2.2 of the Lease allows ND Properties to recover all reasonable costs related to re-letting the premises.  It specifically provides:

> . . . Tenant shall be liable for Landlord's reasonable expenses in redecorating and restoring the Demised Premises and all reasonable costs incident to such re-letting, including broker's commissions and lease assumptions, and in no event shall Tenant be entitled to any

22

rentals received by Landlord in excess of the amounts due by Tenant hereunder . . . .

Def.'s Ex. 1 at 24.

The undisputed evidence shows that ND Properties seeks to recover $222,884.28, or approximately 10%, of the total costs expended to re-let the Premises because of Plaintiff's breach of the Lease Agreement.  <u>See</u> Beauchamp Rep. Decl. at ¶ 18.

Plaintiff argues that the damages sought by ND Properties for re-letting the Premises are unreasonable, and constitute an unenforceable liquidated damages clause.  Plaintiff also argues, for the first time in its Response to the Motion for Summary Judgment, that the Lease should be rescinded because ND Properties made substantial renovations to the Premises.  Plaintiff has not presented any evidence to support these claims and they are without merit.  "Conclusory assertions to the contrary, in the absence of supporting evidence, are insufficient to withstand summary judgment."  <u>Holifield v. Reno</u>, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (citations omitted).  Plaintiff cannot avoid summary judgment "solely on the basis of [an] . . . opinion that fails to provide specific facts from the record to support its conclusory allegations."  <u>Evers v. General Motors Corp.</u>, 770 F.2d 984, 986 (11th Cir. 1985).

Paragraph 18 of the Lease allows ND Properties to recover all reasonable

costs related to re-letting the premises, and similar provisions have been held to be enforceable in Georgia.  See Int'l Biochemical, 586 S.E.2d at 445-46. ND Properties seeks from Plaintiff only 10% of the total amount expended to re-let the Premises.  Plaintiff has not presented any evidence to dispute these charges or their reasonableness.  See Evers, 770 F.2d at 986.

### 4.    Clean and Make Repairs

Plaintiff seeks in Count IV a declaration "as to the need for repairs and cleaning as claimed by [ND Properties], its liability under the Lease for same and whether it has any responsibility to repair and clean the premises after November 30, 2011."  ND Properties asserts that it previously cleaned and repaired the Premises, and it seeks damages, in its Amended Answer and Motion for Summary Judgment, in the amount of $28,501.74 for costs incurred to clean and repair the Premises after Plaintiff vacated the Pinnacle.  In its Response to Plaintiff's Statement of Additional Facts, ND Properties abandoned its counterclaim for cleanup costs, and "no longer seeks summary judgment on the cleaning issue." Resp. to Pl.'s Statement of Additional Facts at ¶¶ 35-36.

Because ND Properties no longer seeks reimbursement for cleanup costs, the Court is not required to address the merits of Plaintiff's request for declaratory relief on this issue.  See Gill v. Blue Bird Wanderlodge, No. 5:02-cv-328-2(CAR),

2004 WL 5311476, at *3 (M.D. Ga. Feb. 24, 2004).  Count IV of Plaintiff's

Complaint is thus required to be dismissed as moot because there is no longer an

actual controversy regarding cleanup costs.  See Brown v. Tennessee Valley

Authority, 514 F. App'x 865, 868 (11th Cir. 2013) ("When a case no longer

presents a live controversy, the court can no longer give meaningful relief to the

plaintiff, and the case is moot."); Hartford Cas. Ins. Co. v. Intrastate Const. Corp.,

501 F. App'x. 929, 937 (11th Cir. 2012) (holding that lack of a live controversy

between the parties moots a declaratory judgment claim).

> 5.      *Charges for Interest*

Plaintiff argues that ND Properties is not entitled to interest payments

because it has not presented evidence of the rate used to calculate the amount of

interest charged on the unpaid amount owed under the Lease.  Paragraph 11 of the

Lease provides that interest on the past due amounts shall be calculated as follows:

> . . . at a rate per annum equal to the lesser of (i) the then Prime Rate in
> effect from time to time plus two percentage points; (ii) eighteen
> percent (18%) per annum; or (iii) the highest rate permitted by law,
> from due date until paid.

See Ex. 1 at ¶ 11.

On December 9, 2013, ND Properties submitted evidence that the applicable

prime rate for the unpaid amount owed under the lease from December 1, 2011,

through the present is 3.25%, and that the total amount of interest accrued on the

unpaid amounts to date was charged at a rate of 5.25%.  See Beauchamp Rep.

Decl. at ¶¶ 12-15.  The Court finds that the undisputed evidence shows that interest

was calculated at the "then Prime Rate in effect from time to time plus two

percentage points," consistent with Paragraph 11 of the Lease.

>    6.    *Attorneys' Fees*

Paragraph 18.2.3 of the Lease allows ND Properties to be "reimburse[ed] on

demand for any expenses, including, without limitation, reasonable attorneys' fees

which [ND Properties] may incur in thus effecting compliance with Tenant's

obligations under this Lease . . . ."  Def.'s Ex. 1 at 26-27.  The Court finds that

Paragraph 18.2.3 of the Lease, and O.C.G.A. § 13-1-11, permit ND Properties to

recover reasonable attorneys' fees incurred to enforce the Lease.  See Hope Elec.

Enter., Inc. v. Proforce Staffing, 601 S.E.2d 723, 725-726 (Ga. App. Ct. 2004)

(holding that plaintiff is entitled to attorneys' fees and costs under O.C.G.A.

§ 13-1-11 because "by forcing [plaintiff] to resort to litigation in order to collect

the debt plainly owed under the contract, [defendant] has caused [plaintiff]

unnecessary trouble and expense, and the trial court did not err in awarding

[plaintiff] attorneys' fees . . .").

ND Properties, however, has not submitted evidence of its reasonable

attorneys' fees and expenses incurred in connection with this matter.  There is thus

no current basis for the Court to evaluate the reasonableness of the attorneys' fees claimed by ND Properties.  ND Properties is required to file an application for attorneys' fees, which shall include detailed time records showing, by individual time entry and time keeper, the legal services performed and hourly rate of each timekeeper and any expense incurred.  The application shall be filed on or before August 22, 2014.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that ND Properties' Motion for Summary Judgment [32] is **GRANTED IN PART**.  ND Properties' Motion for Summary Judgment is **GRANTED** on Counts II and III of Plaintiff's Complaint, and on ND Properties' Counterclaim for unpaid rent, unpaid utilities and parking fees, unreimbursed re-letting costs, and unpaid interest charged to date.  The Motion for Summary Judgment is **DEFERRED** on ND Properties' Counterclaim for attorneys' fees and costs.  Defendant may file, on or before August 22, 2014, its application for attorneys' fees and costs.

**IT IS FURTHER ORDERED** that Count IV of Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

27

**IT IS FURTHER ORDERED** that judgment is entered in favor of ND Properties and against Plaintiff in the amount of $755,048.84, consisting of: unpaid rent from December 1, 2011 through September 30, 2013, in the amount of $464,074.49; accrued interest to date, in the amount of $28,750.09; unpaid parking charges and fees in the amount of $16,500.22; unreimbursed above-standard water and electricity charges in the amount of $22,839.76; and unreimbursed costs of re-letting the Premises in the amount of $222,884.28.

**SO ORDERED** this 5th day of August 2014.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

28