[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15103
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-01020-WSD

3455, LLC,

                                      Plaintiff-Counter Defendant-
                                      Appellant,

versus

ND PROPERTIES, INC.,

                                      Defendant-Counter Claimant-
                                      Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 9, 2015)

Before HULL, ROSENBAUM and JULIE CARNES, Circuit Judges.

PER CURIAM:

This appeal involves a landlord-tenant dispute between 3455, LLC ("3455"), the owners of a high-end restaurant, and ND Properties, Inc. ("ND Properties"), which owned the building in which the restaurant operated.  After 3455 failed to make monthly payments under the terms of the lease, 3455 and ND Properties entered into a consent agreement that compelled 3455 to make outstanding payments and terminate possession of the space.  The parties disputed 3455's obligations following its dispossession, and 3455 filed a motion for declaratory judgment to clarify its rights and responsibilities.  The district court granted ND Properties's motions for judgment on the pleadings and summary judgment and awarded damages in excess of $770,000.  After a thorough review of the record, we affirm.

## I.  BACKGROUND

In June 1998, 3455 entered into a fifteen-year lease (the "Lease")[1] with Cousins Loret Venture, LLC ("Cousins") to rent space for a restaurant (the "premises") in a building in the Buckhead area of Atlanta (the "Pinnacle building").  Relevant to this appeal, the Lease contained the following provisions:

> ¶ 5.1 Payment of Rent.  Tenant hereby agrees to pay all Base Rental and due and payable under this Lease commencing on the Rent Commencement Date and continuing thereafter throughout the Lease Term.
>
> . . .

---

[1] The Lease was amended to extend the term through October 31, 2014.

2

¶ 11 <u>Late Charges</u>.  Tenant shall pay to Landlord, as a late charge in the event any . . . sum to be paid hereunder is not paid when due, interest on the amount past due at a rate per annum equal to the lesser of (i) the then Prime Rate in effect from time to time plus two percentage points; (ii) eighteen percent (18%) per annum; or (iii) the highest rate permitted by law, from due date until paid.

. . .

¶ 18.2 <u>Remedies</u>.  Upon the occurrence of any of the aforesaid Events of Default, Landlord shall have the option to pursue any one or more of the following remedies without any further notice or demand whatsoever:

> ¶ 18.2.1  Landlord may terminate this Lease, in which event Tenant shall immediately surrender the Demised Premises to Landord . . . .
>
> ¶ 18.2.2  Landlord may terminate Tenant's right of possession (but not this Lease) and enter upon and take possession of the Demised Premises . . . without thereby releasing Tenant from any liability hereunder, without terminating this Lease . . . and, if Landlord so elects, make such commercially reasonable alterations, redecorations and repairs as, in Landlord's judgment, may be necessary to relet the Demised Premises, and Landlord may, but shall be under no obligation to do so, relet the Demised Premises . . . and Tenant shall be liable for Landlord's reasonable expenses in redecorating and restoring the Demised Premises and all reasonable costs incident to such re-letting . . . .

. . .

¶ 30 <u>Surrender of Premises</u>.  Upon the expiration or other termination of this Lease, Tenant shall quit and surrender to Landlord the Demised Premises, broom clean in the same condition as at the date of Substantial Completion . . . except for reasonable wear and tear  . . . . Subject to Article 58 hereof, Tenant shall remove all personalty and equipment not attached to the Demised Premises which it has placed upon the Demised Premises, and Tenant shall restore the Demised Premises to the condition immediately preceding the time of

>  placement thereof.  If Tenant shall fail or refuse to remove all of
>  Tenant's effects, personalty and equipment from the Demised
>  Premises upon the expiration or termination of this Lease for any
>  cause whatsoever or upon the Tenant being dispossessed by process of
>  law or otherwise, such effects, personalty and equipment shall be
>  deemed conclusively to be abandoned and may be appropriated, sold,
>  stored, destroyed or otherwise disposed of by Landlord without
>  written notice to Tenant or any other party and without obligation to
>  account for them . . . .  The covenants and conditions of this Article 30
>  shall survive any expiration or termination of this Lease.
>
>  . . .
>
>  ¶ 58 Security Agreement.  Landlord shall at all times have, and Tenant
>  does hereby grant to Landlord, a valid first lien and security interest in
>  and to (i) all of the trade fixtures, furniture, furnishings, equipment,
>  and personal property of Tenant . . . .

In 2004, Cousins sold the Pinnacle building and assigned its rights and obligations to ND Properties.[2]  In April 2009, ND Properties granted the Georgia Department of Transportation ("GDOT") a right-of-way and easement to the grounds for road improvements and a sidewalk.  Thereafter, GDOT began construction on the area outside 3455's restaurant, closing traffic lanes and limiting access to the driveway of the building.

During this same time frame, the restaurant's business decreased due in part to the recession, and 3455 failed to pay rent on multiple occasions.  As a result, ND Properties filed several dispossessory actions between 2009 and 2011.  In July

---

[2] One of 3455's declarants states that Cousins continued to manage the building after selling to ND Properties, while one of ND Properties's witnesses simply states that Cousins assigned "all of its rights and interest in the Lease" to ND Properties.  We find no material discrepancy in this testimony pertinent to our analysis.

2011, ND Properties initiated an action to dispossess 3455 based on the latter's failure to timely pay rent due on the first of the month (which constituted defaulting on the Lease).  To resolve this action, 3455 and ND Properties entered into a consent agreement (the "Consent Agreement") in which 3455 agreed to: (1) make rent, parking and utilities payments through November 2011 by the end of August 2011; (2) vacate the premises by November 30, 2011; (3) not remove any personal property; and (4) "timely perform[] all of its obligations under [the] Lease Agreement dated June 11, 1998."  The Consent Agreement further stated that ND Properties's taking possession of the premises would not constitute "an acceptance" of 3455's surrender of the premises under the Lease terms.

3455 made the payments as required under the Consent Agreement and vacated the premises on November 30, 2011.  It did not, however, make any payments beyond that date.  ND Properties sent two demand letters seeking payment under the Lease for the remainder of the Lease term and requiring 3455 to clean and repair the premises.  3455 then filed an action for declaratory judgment in Gwinnett County Superior Court to determine whether (1) 3455 was responsible for rent payment under the Lease after it vacated the premises; (2) ND Properties's retention of personal property was permissible and should be used to satisfy any

5

claims; (3) the Lease terminated upon the partial taking of the premises by GDOT; and (4) 3455 had any duty to clean and repair the premises.[3]

ND Properties removed the action to federal court and moved for judgment on the pleadings as to whether the dispossession terminated 3455's obligation to pay rent through the remainder of the Lease term. In an order dated February 12, 2013, the district court granted the motion for judgment on the pleadings, finding that the Lease contained an explicit and detailed provision allowing post-eviction rent and that this provision was enforceable under Georgia law.

ND Properties subsequently amended its answer to assert a counterclaim for amounts due and owing under the Lease. Following discovery, ND Properties moved for summary judgment on 3455's remaining claims and on its counterclaim. ND Properties sought to recover $772,788.34 in unpaid rent, parking fees, utilities charges, and costs incurred in re-letting the premises; it also sought to recover $77,303.83 in attorney's fees pursuant to ¶ 18.2.3 of the Lease and Ga. Code. Ann. § 13-1-11.[4]

---

[3]ND Properties abandoned its claim for costs of cleaning and repair in its reply to 3455's response to the summary judgment motion.

[4]Under ¶ 18.2.3 of the Lease, 3455 "agree[d] to reimburse Landlord on demand for any expenses, including, without limitation, reasonable attorneys' fees which Landlord may incur in thus effecting compliance with Tenant's obligations under this Lease." Ga. Code. Ann. § 13-1-11 provides that "obligations to pay attorney's fees upon any note or other evidence of indebtedness" are enforceable, and sets forth how such fees should be calculated.

In opposing summary judgment, 3455 argued that ND Properties (1) was required to sell the personal property 3455 left behind when it vacated the premises and credit 3455's account with the proceeds; (2) breached its covenant of quiet enjoyment and duty of good faith when it agreed to the GDOT taking and failed to notify 3455; (3) was not entitled to parking fees and utilities for the period after 3455 vacated the premises because the Consent Agreement did not allow for such additional payment; (4) was entitled to only those costs that were reasonable for re-letting the space, but not the costs of extensive renovations; and (5) had not proven the amount of interest it requested.

In an August 5, 2014 order, the district court granted summary judgment to ND Properties, finding that the Lease did not terminate upon the grant to GDOT because (a) there was no evidence any part of the premises was taken;[5] (b) there was no evidence the alleged taking impacted 3455's use of the premises; and (c) even if there was a taking of the premises, 3455 never notified ND Properties of its intent to terminate, as required under the terms of the Lease. The district court further found that ND Properties had the right to do whatever it wished with the personal property on the premises under the terms of the Lease and the Consent Agreement.

---

[5]The Lease defined the "Demised Premises" as "[t]hat certain rentable floor area on the 1st floor of the Building . . . plus approximately 2,000 square feet of usable floor area on the concourse level of the Building . . . ." Lease ¶ 1.2.

With respect to ND Properties's counterclaim, the district court found that the Lease unambiguously allowed ND Properties to collect rent after 3455 vacated the premises through the end of the Lease term, and that under the terms of the Consent Agreement, ND Properties could collect parking and utilities charges for the time period after 3455 vacated the premises. Addressing the costs of re-letting the space, the district court found that the Lease provision allowing ND Properties to recoup this cost was enforceable. The district court noted that ND Properties only sought about ten percent of the total amount expended to release the premises.

Finally, the district court found that ND Properties presented sufficient evidence (namely declarations from Linda Beauchamp, a property manager responsible for the Pinnacle building) for the applicable interest rate and the total amount of accrued interest to be properly calculated. The Lease set the interest rate at the prime rate plus 2%, and Beauchamp used the applicable prime rate of 3.25%, plus 2%, and calculated the interest for the relevant time period. Accordingly, the district court granted ND Properties's motion for summary judgment and awarded damages totaling $755,048.84. This amount consisted of $464,074.49 in rent, $28,750.09 in interest, $16,500.22 in parking fees, $22,839.76 in utilities, and $222,884.28 in costs associated with re-letting the space. The district court deferred a decision on ND Properties's request for attorney's fees in

its counterclaim and required additional evidence of the amount owed pursuant to ¶ 18.2.3 of the Lease and Ga. Code. Ann. § 13-1-11.

Subsequently, ND Properties filed a motion for attorney's fees in the amount of $75,572.38. In an October 10, 2014 order, the district court granted this motion, but awarded ND Properties $39,606.84 in attorney's fees based on Ga. Code. Ann. § 13-1-11.

This is 3455's appeal as to the two orders granting judgment on the pleadings and summary judgment. 3455 does not appeal the attorney's fees order.

## II.  LEGAL STANDARD

"We review de novo an order granting judgment on the pleadings." Perez v. Wells Fargo, N.A., 774 F.3d 1329, 1335 (11th Cir. 2014). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Id. (citation and quotation marks omitted). "In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." Id.

"We review de novo the district court's grant of a motion for summary judgment, considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." Ellis v. England, 432 F.3d 1321,

1325 (11th Cir. 2005). Summary judgment is appropriate only when there exists no genuine factual dispute and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Because this case was based on diversity jurisdiction, we apply the substantive law of the forum state and federal procedural law. Royalty Network, Inc. v. Harris, 756 F.3d 1351, 1357 (11th Cir. 2014). Under Georgia law,

> [t]he construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

City of Baldwin v. Woodard & Curran, Inc., 743 S.E.2d 381, 389 (Ga. Ct. App. 2013) (alteration in original) (citation omitted). "The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity . . . ." Simpson v. Infinity Select Ins. Co., 605 S.E.2d 39, 42 (Ga. Ct. App. 2004) (internal citation omitted). "[L]anguage is unambiguous if it is capable of only one reasonable interpretation." Hammer Corp. v. Wade, 628 S.E.2d 638, 641 (Ga. Ct. App. 2006) (alteration in original) (citation and quotation marks omitted). When analyzing a disputed

10

contract under the first step of Georgia's contract construction inquiry, if "the words in th[e] contract are plain and obvious, they must be given their literal meaning," and "unambiguous terms are taken in their plain, ordinary and popular sense as supplied by dictionaries."  Record Town, Inc. v. Sugarloaf Mills Ltd. P'ship of Ga., 687 S.E.2d 640, 642 (Ga. Ct. App. 2009).  Additionally, language in a contract is construed against the drafter.  Ga. Code Ann. § 13-2-2.  The construction which will "uphold a contract in whole and in every part is to be preferred."  Norton v. Hutton, 324 S.E.2d 744, 745 (Ga. Ct. App. 1984) (citation and quotation marks omitted).

### III.  ANALYSIS

On appeal, 3455 challenges the district court's rulings granting ND Properties (1) judgment on the pleadings; (2) summary judgment on 3455's claim relating to personal property left on the premises; and (3) summary judgment on its counterclaim.  We address each in turn.

**A.      Judgment on the Pleadings**

3455 first argues that the district court erred in granting judgment on the pleadings because it failed to consider (a) whether the Lease provision allowing post-eviction rental payments violated public policy and (b) whether ND Properties's actions showed that it had accepted 3455's surrender of the premises, thereby terminating the Lease.  We disagree.

The Lease provided that "Tenant hereby agrees to pay all Base Rental and due and payable under this Lease . . . continuing thereafter throughout the Lease Term." Lease ¶ 5.1. It further provided that "Landlord may terminate Tenant's right of possession (but not this Lease) and enter upon and take possession of the Demised Premises . . . without thereby releasing Tenant from any liability hereunder [and] without terminating this Lease." Id. ¶ 18.2.2. Moreover, the Consent Agreement itself stated that 3455 would "timely perform[] all of its obligations under [the] Lease Agreement . . . ."

These provisions expressly and unambiguously demonstrate that the parties agreed ND Properties could collect post-eviction rent. Such terms are enforceable under Georgia law. See Int'l Biochemical Indus., Inc. v. Jamestown Mgmt. Corp., 586 S.E.2d 442, 445 (Ga. Ct. App. 2003) ("Although the general rule is that when a landlord evicts a tenant and takes possession of the premises, the lease is terminated and the right to claim rent which accrues after eviction is extinguished, the parties to a lease may contract to hold the lessee liable for post-eviction rent.").

Although 3455 argues to the contrary, the record shows that the district court did consider 3455's argument that its payment of post-eviction rent violated public policy. In addition, 3455's public policy argument misses the mark. 3455 contends that the Lease violated public policy by

leaving it to ND Properties's sole discretion whether to re-let the premises. See Lease 18.2.2. (upon taking possession of the premises, "Landlord may, but shall be under no obligation to do so, relet the Demised Premises"). 3455 cites cases involving acceleration clauses (permitting the advance collection of future rent) which were deemed unreasonable and oppressive. See Nobles v. Jiffy Mkt. Food Store Corp., 579 S.E.2d 63, 65-66 (Ga. Ct. App. 2003). However, Nobles is not on-point because the Lease here contained no such acceleration clause. Further, under the Consent Agreement, 3455 agreed to comply with the terms of the Lease, which included the monthly payment of future rent as it came due. This is not an acceleration case.

Acknowledging that no acceleration clause exists in the Lease, 3455 notes that, under Georgia law, a landlord must mitigate its damages following a tenant's surrender of leased property by re-renting it. See Allen v. Harkness Stone Co., 609 S.E.2d 647, 650 (Ga. Ct. App. 2005) (noting that, upon a tenant's surrender and the landlord's acceptance of the surrender, the landlord is "required to make reasonable efforts to re-lease the premises and mitigate his damages"). 3455 complains that the Lease it signed did not have an express clause requiring ND Properties to mitigate, and thus the Lease is invalid as to post-eviction rent.

13

However, 3455 cites no support for finding provisions of the Lease or Consent Agreement invalid for failing to impose an express duty to mitigate.

In any event, the record shows that ND Properties did re-let the premises and credited 3455 for the amount it received in the new lease, thereby mitigating its damages. 3455 fails to show that ND Properties's collection of post-eviction rent violated public policy.

To the extent that 3455 argues that ND Properties accepted a surrender of the premises or otherwise acted in a manner showing acceptance of surrender, we disagree. The Consent Agreement specifically provided that "neither . . . Landlord's consent to this order, nor Landlord's taking possession of the leased premises shall constitute an acceptance by Landlord of Tenant's surrender of the leased premises." Moreover, seeking to enforce a "broom clean" condition, which 3455 contends was a requirement only under ¶ 30 of the Lease (governing "Surrender of Premises"), was not conduct showing an acceptance of surrender. Again, in the Consent Agreement, the parties expressly agreed that ND Properties's taking possession was not an acceptance of 3455's surrender. Accordingly, there was no error in the district court's grant of judgment on the pleadings as to this issue.

**B.     Summary Judgment**

3455 next argues that the district court erred in granting summary judgment because ND Properties failed to act in a commercially reasonable manner in (a) improperly retaining possession of 3455's personal property and (b) failing to promptly auction all the personal property and apply the proceeds towards 3455's outstanding debt pursuant to ¶ 58 of the Lease.  The district court found that the property 3455 left behind was not governed by ¶ 58 of the Lease because 3455 had been dispossessed of the premises under the Consent Agreement, and thus ¶ 30 of the Lease, which gave ND Properties control over "abandoned" personalty and equipment on the premises, governed.  We agree.

Under ¶ 6 of the Consent Agreement, 3455 was to vacate the premises and leave behind all personal property.  Paragraph 58 of the Lease gave ND Properties a security interest in 3455's personal property on the premises as collateral for any outstanding debt.  This paragraph further provided that "upon the occurrence of an Event of Default hereunder, Landlord shall have the remedies of a secured party under the Uniform Commercial Code of Georgia."

Paragraph 30 of the Lease provided that "If Tenant shall fail or refuse to remove . . . personalty and equipment . . . upon the Tenant being dispossessed by process of law or otherwise, such effects . . . shall be deemed conclusively to be

15

abandoned and may be appropriated, sold, stored, destroyed, or otherwise disposed of by Landlord without . . . obligation to account for them . . . ."

Assuming <u>arguendo</u> that the two Lease provisions above create an ambiguity in the Lease, we turn to general rules of contract interpretation to resolve it.  <u>City of Baldwin</u>, 743 S.E.2d at 389.  Under general rules of contract interpretation, a specific provision prevails over a broader one.  <u>Tower Projects, LLC v. Marquis Tower, Inc.</u>, 598 S.E.2d 883, 885 (Ga. Ct. App. 2004) (concluding that a more specific provision prevailed over a general provision).  And we will "avoid any construction that renders portions of the contract language meaningless."  <u>Id.</u> (citation and quotation marks omitted).

Here, ¶ 30 applies more specifically to the status of personalty in the case of dispossession, whereas ¶ 58 speaks more generally about an interest in the personalty as collateral as a means to cover debt in the event of default.  The paragraph covering Events of Default provides that ND Properties may, as a remedy for default, dispossess 3455 of the premises but not terminate the Lease.  This is precisely the avenue that ND Properties selected, thus triggering the specific provision of ¶ 30 over the more general provision of ¶ 58.  To construe the contract otherwise would render portions of ¶ 30 meaningless.[6]

---

[6]For this same reason, 3455's argument that ¶ 30 references ¶ 58 fails.  Although ¶ 30 states "[s]ubject to [¶] 58 hereof, Tenant shall remove all personalty and equipment not attached to the Demised Premises," that ¶ 30 provision further explains that failure to remove such items

16

To the extent that 3455 argues it did not "abandon" its personalty and equipment because it was required to leave property behind under the terms of the Consent Agreement, this argument fails. Paragraph 30 of the Lease stated that personalty and equipment that 3455 "fail[ed] or refuse[d] to remove" from the premises upon being dispossessed "by process of law or otherwise" was to be deemed abandoned. The Lease's definition of abandoned property is enforceable. See Kurc v. Herren, 396 S.E.2d 62, 63 (Ga. Ct. App. 1990) (treating property left after termination of lease as abandoned not because it was left on the premises but rather because it was "abandoned" as that term was defined in the lease). In the Consent Agreement, the parties agreed that 3455 would leave the premises and leave personal property behind. 3455 thus contracted to a situation falling within a plain reading of ¶ 30. 3455 cannot now challenge that to which it already agreed.

Parties are free to contract on any terms as they see fit, absent illegality or public policy concerns, and courts will not interfere with the parties' decision. See id. Having contracted to leave the property on the premises, 3455 cannot now claim it was forced to do so; and in failing to remove its property from the

---

"upon the expiration or termination of this Lease for any cause whatsoever or upon the Tenant being dispossessed" results in the personalty and equipment being considered abandoned. Thus, although ¶ 30 refers to ¶ 58, the use of the disjunctive "or" to cover cases of dispossession confirms that ¶ 30 is intended to cover dispossession, whereas ¶ 58 applies to a security interest in the property.

premises, it abandoned the premises within the meaning of ¶ 30. Accordingly, the district court properly granted summary judgment on this claim.

**C.   Counterclaim**

Finally, 3455 argues that the district court erred by finding in favor of ND Properties on its counterclaim for damages because the district court reached the amounts awarded based on the declarations of Linda Beauchamp. On appeal, 3455 contends that the declarations were inadequate because they contained hearsay, lacked proper foundation, and were not supported by any business records or competent testimony.

A review of the record shows that 3455 made the hearsay argument before the district court only as to attorney's fees[7] and not as to the unpaid rent, utilities, parking fees and cost to re-let. Our case law is clear; arguments raised for the first time on appeal are generally not considered. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004). Although there are five circumstances in which we may choose to hear an argument raised for the first time on appeal, see id. at 1332, we find none of those circumstances applies here.

To the extent that 3455 preserved a challenge to Beauchamp's declarations on the grounds that they lacked proper foundation and were not based on personal

---

[7]As to ND Properties's request for attorney's fees, 3455 did make a brief hearsay argument in the district court, but 3455 on appeal has not challenged the award of $39,606.84 in attorney's fees.

knowledge, we conclude the district court properly considered the evidence.[8]  In her declarations, Beauchamp explained that she worked as a Senior Property Manager for the companies responsible for managing the Pinnacle building and that her testimony was based on personal knowledge.  She explained the calculations for the costs of re-letting the premises and detailed the amounts 3455 owed in interest, parking, and utilities.  She further explained the basis for arriving at the applicable interest rate.  3455 has not shown how Beauchamp's testimony lacked a proper foundation or was not based on her personal knowledge.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's orders dated February 12, 2013 and August 5, 2014.

**AFFIRMED.**

---

[8]We review evidentiary rulings for abuse of discretion, and even where error has been shown, we will reverse only if that error was prejudicial.  See Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1276 (11th Cir. 2008).

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Amy C. Nerenberg
Acting Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 09, 2015

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 14-15103-GG
Case Style: 3455, LLC v. ND Properties, Inc.
District Court Docket No: 1:12-cv-01020-WSD

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Eleanor M. Dixon, GG at (404) 335-6172.

Sincerely,

AMY C. NERENBERG, Acting Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs